IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEONTE SINGLETARY,
      Plaintiffs,

v.                            Civil Action No. 3:24cv877

SUNBIT NOW, LLC, *et al.*,
      Defendants.

## OPINION

When Keonte Singletary brought his car in for repairs at Leete Tire and Auto Center ("Leete"), he entered into a financing agreement with Sunbit Now, LLC ("Sunbit") and Transportation Alliance Bank ("TAB") to finance the cost of the repairs. Days later, Singletary attempted to rescind the agreement by sending a notice to Sunbit and TAB alleging that they, along with Leete, fraudulently induced him into the contract. Sunbit and TAB did not accept the rescission. Singletary ultimately failed to make timely payments on the agreement, prompting Sunbit and TAB to report the account as a charge-off to Trans Union LLC ("Trans Union"), a credit reporting agency. Singletary disputed the accuracy of the charge-off, but Trans Union continued to report the charge-off on Singletary's credit reports, causing damage to his credit score.

Singletary now sues Sunbit, TAB, Leete, and Trans Union (collectively, the "defendants") for fraudulently inducing him into the financing agreement, conspiring against him to enforce the agreement, and continuing to report false credit information even after he disputed the validity of the contract. The defendants each move to dismiss Singletary's amended complaint for failure to state a claim.[1] Singletary further moves to strike or exclude an attachment to Sunbit and TAB's motion to dismiss, as well as to supplement his opposition to the defendants' motions to dismiss.

---

[1] Sunbit and TAB have filed a motion to dismiss together.

Because Sunbit and TAB have not properly authenticated the attachment to their motion to dismiss, the Court will not consider that document in evaluating the validity of Singletary's claims. At the same time, the Court will deny Singletary's motion to file a supplemental opposition to the defendants' motions to dismiss, as his supplemental filing addresses matters that he already had the chance to raise when responding to the defendants' motions to dismiss and effectively functions as an impermissible surreply. Finally, all of Singletary's claims fail to state a claim, are time-barred, or are preempted. Thus, the Court will grant the defendants' motions to dismiss.

## I. BACKGROUND

### A. Factual Allegations[2]

On November 9, 2022, Singletary took his car to Leete for repairs. (*See* ECF No. 30 ¶¶ 14, 55.) Although Singletary initially planned to pay in full for the repairs, Leete's agent, David, induced Singletary into an alternative financing agreement with Sunbit and TAB by presenting the arrangement "as beneficial to [Singletary] while failing to disclose key terms clearly and conspicuously." (*Id.* ¶ 15.) When Singletary later reviewed the written agreement, he discovered that David had made "numerous misrepresentations and fraudulent inducements," including "[i]naccurate disclosures regarding the true cost of credit," "[m]isleading advertising about the terms and the impact on [Singletary's] credit score," and "[m]isrepresentation[s] [about] payment terms and interest rates." (*Id.* ¶ 16.) David also "misrepresented the nature of the repairs needed for [Singletary's] vehicle, charging for unnecessary parts and labor." (*Id.* ¶ 55.)

---

[2] The Court takes these allegations primarily from Singletary's amended complaint, as well as some additional details from his briefs opposing the defendants' motions to dismiss. *See Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025) (considering materials beyond the complaint in evaluating a *pro se* plaintiff's claims).

Two days later, Singletary sent a notice of recission to Sunbit and TAB. (*See id.* ¶ 17; ECF No. 30-1.)  The notice stated that Sunbit and TAB fraudulently induced Singletary into entering into the financing agreement and that he was unilaterally cancelling the transaction as a result. (*See* ECF No. 31-1, at 2.)  Singletary demanded that Sunbit and TAB return his "illegally obtained down payment" and not report his private information to any credit reporting agency. (*Id.*)  He also stated that "[t]his notice . . . falls within the three day right of rescission period provided under [f]ederal [l]aw." (*Id.*)

Despite Singletary's notice, Sunbit, TAB, and Leete refused to return his down payment, "[a]ttempted to enforce the fraudulent agreement through abusive collection practices," and "devise[d] a scheme aimed at undermining [Singletary's] ability to assert his rights." (ECF No. 30 ¶ 22.)  Trans Union later participated in this scheme when it failed "to properly investigate and rectify inaccuracies in [Singletary's] credit report." (*Id.* ¶ 21.)  Singletary ultimately failed to make timely payments on his account,[3] prompting Sunbit and TAB to report it as a charge-off. (*Id.* ¶ 23.)

Singletary spent the next two years seeking to have his down payment returned, the charge-off deleted from his credit history, and Sunbit and TAB cease reporting the charge-off to credit reporting agencies. (*See* ECF Nos. 30-1 to -11.)  On November 15, 2022, Singletary sent Sunbit and TAB a letter stating that he "in good faith entered into a consumer credit transaction without the belief [he] would be taken advantage of, only to be misled, fraudulently induced, and [have his] federally protected consumer rights violated . . . ." (ECF No. 30-3, at 2.)  He further asserted that the companies' "privacy policy, credit pull authorization, and loan agreement all were not fully disclosed to [him] until AFTER [they] fraudulently induced [him] and received [his]

---

[3] Though not entirely clear from the amended complaint, Singletary appears to have missed certain payment deadlines under the financing agreement. (*See* ECF No. 30-5, at 2; ECF No. 30-10, at 2.)

signature and a fraudulently obtained down payment, nor are they clear and conspicuous which makes them null and void." (*Id.*)

On February 9, 2023, Singletary spoke with a Sunbit customer service representative over the phone. (*See* ECF No 30-10.) The representative initially told Singletary that Sunbit had "taken away [his] responsibility from this account due to some information [the company] received." (*Id.* at 2.) When Singletary asked what the representative meant by "taken away [his] responsibility" and why his credit report indicated that he had made a late payment if he was not responsible for the account, the representative stated that she would not "speak to [his] account at all" but instead would send Singletary's questions to Sunbit's legal department. (*Id.* at 3.)

Singletary never heard from Sunbit's legal department. Instead, a Sunbit customer resolution associate emailed Singletary on March 24, 2023, stating that Leete had "denied [his] request to adjust or cancel [his] Sunbit loan." (ECF No. 30-9, at 2.) The associate explained that Sunbit could not assist him any further and that David at Leete had "submitted a signed invoice for the work done associated with this loan." (*Id.*) In response, Singletary informed the associate that he would be "looking into proceeding with legal action" against Sunbit based on his prior conversation in which the customer service representative told him that he lacked responsibility for the account. (*Id.*) Singletary insisted that he never "sign[ed] up for a loan or ask[ed] Leete . . . to adjust anything." (*Id.*)

On July 20, 2023, Singletary sent another letter to Sunbit and TAB explaining that his credit report "included information about a 'charge-off' for a transaction that shouldn't even be in [his] file, a transaction that was rescinded and was null and void due to fraudulent inducement by Sunbit." (ECF No. 30-4 at 2.) He reiterated that a Sunbit representative had told him that he was not responsible for the account and demanded that Sunbit and TAB delete the charge-off. (*Id.* at

2–3.) Singletary then sent Trans Union two letters in August and September 2023, in which he disputed the accuracy of the charge-off account and demanded that Trans Union verify the disputed information, remove the charge-off from his credit report, and provide him with copies of any documentation associated with its investigation. (*See* ECF Nos. 30-5 to -6.) He followed up again on April 5, 2024, asking Trans Union to provide details about its investigation and explain why the information in his Trans Union credit report did not match that found in reports from other credit reporting agencies. (*See* ECF No. 30-7, at 2.) Singletary ultimately sent a final letter to Sunbit and TAB on October 1, 2024, requesting validation of the alleged debt on the credit report. (*See* ECF No. 30-8, at 2.)

### B. Procedural History

On November 8, 2024, Singletary filed this suit in Chesterfield County Circuit Court against Sunbit, TAB, and Leete. (*See* ECF No. 1-1.) Leete later removed this action on federal question and diversity grounds, with Sunbit and TAB subsequently consenting to removal. (*See* ECF No. 28, at 3–5.) Singletary then filed an amended complaint in which he added Trans Union as a fourth defendant and asserted the following claims:

(1)    Violation of the Virginia Computer Crimes Act ("VCCA") by Sunbit, TAB, and Leete;

(2)    Civil conspiracy, in violation of Virginia Code § 18.2-499, by all defendants;

(3)    Unjust enrichment by Sunbit, TAB, and Leete;

(4)    Defamation by all defendants;

(5)    Fraudulent misrepresentation by Sunbit, TAB, and Leete;

(6)    Fraudulent inducement by Sunbit, TAB, and Leete;

(7)    Intentional infliction of emotional distress ("IIED") by all defendants;

(8)    Negligence *per se* by all defendants;

5

(9)     Fair Credit Billing Act ("FCBA") violations by Sunbit and TAB;

(10)    Fair Credit Reporting Act ("FCRA") violations by Sunbit, TAB, and Trans Union;

(11)    Truth in Lending Act ("TILA") violations by Sunbit, TAB, and Leete;

(12)    Fair Debt Collection Practices Act ("FDCPA") violations by Sunbit and TAB;

(13)    Racketeer Influenced and Corrupt Organizations ("RICO") Act violations by all defendants;

(14)    Electronic Funds Transfer Act ("EFTA") violations by Sunbit and TAB; and

(15)    Computer Fraud and Abuse Act ("CFAA") violations by all defendants.

(*See* ECF No. 30.)  In short, Singletary alleges that the defendants knowingly conspired against him by fraudulently inducing him into the financing agreement, reporting false credit information despite his repeated disputes, and failing to properly investigate the alleged inaccuracies or otherwise take proper remedial measures.  Singletary seeks compensatory, statutory, treble, and punitive damages, in addition to equitable relief.

Each of the defendants now moves to dismiss Singletary's amended complaint for failure to state a claim.  Sunbit and TAB have attached the purported financing agreement to their memorandum in support of their motion to dismiss.  (*See* ECF No. 45-1.)  Singletary disputes the authenticity, completeness, and accuracy of the attachment and moves to exclude it from the Court's consideration at this stage.  (*See* ECF No. 52.)  He also moves for leave to file a supplemental opposition to the defendants' motions to dismiss.  (*See* ECF No. 68.)

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must present sufficient facts to state a facially plausible claim for relief.  *See Short v. Harman*, 87 F.4th 593, 603 (4th Cir. 2023).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).  Courts must accept as true the complaint's factual allegations and draw all reasonable inferences in favor of the non-moving party.  *Id.*  They also may consider allegations that a *pro se* plaintiff includes in subsequent filings, *see Holley*, 134 F.4th at 144, and must liberally construe the allegations in the complaint, *see Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022).  At the same time, "that does not give a court license to look beyond the claim presented." *Id.* Moreover, courts need not accept the veracity of conclusions or threadbare recitals of the cause of action's elements. *Iqbal*, 556 U.S. at 678.

## III. <u>DISCUSSION</u>

### A. *Motion to Strike*

"The Court first considers [Singletary's] [m]otion to [s]trike because it bears directly on what the Court may consider in adjudicating [Sunbit and TAB's] [m]otion to [d]ismiss." *McClarigan v. Riverside Hosp., Inc.*, No. 4:21-cv-148, 2022 WL 3588031, at *2 (E.D. Va. Aug. 22, 2022).  Parties may move to strike certain matters only from pleadings. *Id.* (citing Fed. R. Civ. P. 12(f)).  A "pleading" includes "a complaint; a third-party complaint; an answer to a complaint, counterclaim, crossclaim, or third-party complaint; and a reply to an answer." *Id.* (citing Fed. R. Civ. P. 7(a)(1)–(7)).  It "does not include motions, briefs, and accompanying affidavits." *Id.* Accordingly, the Court cannot strike the financing agreement that Sunbit and TAB attached to their motion to dismiss under Rule 12(f).

Beyond his request to strike, however, Singletary asks the Court to at least exclude the attached financing agreement from its consideration as it adjudicates Sunbit and TAB's motion to dismiss.  Courts may consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Given that Singletary's claims arise directly from a dispute as

to the validity of the financing agreement, it unquestionably is integral to his claims. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). But Singletary challenges the document's authenticity, and Sunbit and TAB have produced no evidence, such as an affidavit, "to support a finding that the item is what the proponent claims it is." *United States v. Walker*, 32 F.4th 377, 393 (4th Cir. 2022) (quoting Fed. R. Evid. 901(a)); *see Johnson v. Green*, No. 1:23cv185 (RDA/IDD), 2024 WL 3905718, at *3 (E.D. Va. Aug. 22, 2024) ("Documents can be authenticated by an affidavit of an individual with personal knowledge able to provide evidence sufficient to support a finding that the matter in question is what its proponent claims." (internal quotation marks and citation omitted)). As a result, the Court will not consider the financing agreement that Sunbit and TAB attached to their motion to dismiss in evaluating Singletary's claims.

## B. Motion for Leave

The Court next considers Singletary's motion for leave to file a supplemental opposition to the defendants' motions to dismiss. Singletary asserts that he does not seek to introduce new claims or use the proposed supplemental brief as a surreply. (*See* ECF No. 68, at 1; ECF No. 70, at 4.) But no matter how Singletary attempts to frame his supplemental brief, it effectively functions as a surreply. Courts highly disfavor surreplies and ordinarily permit them only if a defendant raises a new argument in a reply brief to which a plaintiff has not had the opportunity to respond. *See Browne v. Waldo*, No. 3:22-cv-648-HEH, 2023 WL 2974483, at *4 (E.D. Va. Apr. 17, 2023). Rather than addressing new arguments, Singletary's proposed supplemental brief concedely "clarifies and reinforces matters already alleged." (ECF No. 68, at 1.) Singletary has already had ample opportunity in his initial opposition briefs to highlight the matters he seeks to address. (*See* ECF Nos. 58, 59, 65). The Court even granted leave for Singletary to file an opposition brief exceeding the standard page limit, (ECF No. 64), and twice expanded the period

for Singletary to respond to the defendants' motions to dismiss, (ECF Nos. 53, 57). Given the lenity the Court has already afforded Singletary—and that his new arguments do not materially alter the Court's analysis of his claims anyway—little reason exists to grant his motion. The Court, therefore, will deny Singletary's request for leave and will not consider the arguments contained in his proposed supplemental brief when addressing the defendants' motions to dismiss.

### C. *Motion to Dismiss*

Having resolved Singletary's motions, the Court turns to the defendants' motions to dismiss. As an initial matter, Singletary predicates his claims on the notion that he "rescinded the contract in accordance with state and federal laws governing fraudulent transactions" by notifying Sunbit and TAB of his rescission within three days of entering into the agreement. (ECF No. 30 ¶ 17; *see* ECF No. 30-1, at 2.) Federal law provides a three-day right of rescission for loans secured by a primary residence. *See* 15 U.S.C. § 1635(a). Virginia similarly permits one to cancel a contract for the purchase of a home within three days of entering into the agreement. *See* Va. Code § 59.1-21.3(1). But no three-day rescission rule exists for transactions like the one here involving repairs to a car. Accordingly, Singletary has provided the Court with no basis to find plausible his allegation that he validly rescinded the contract.

### 1. *State Law Claims*

Singletary brings eight state law claims for (1) violation of the VCCA; (2) statutory civil conspiracy; (3) unjust enrichment; (4) defamation; (5) fraudulent misrepresentation; (6) fraudulent inducement; (7) IIED; and (8) negligence *per se*. The defendants contend that the FCRA preempts most of these claims[4] and that Singletary fails to validly state these claims anyway.

---

[4] The defendants specifically assert that the FCRA preempts Singletary's VCCA, civil conspiracy, defamation, IIED, and negligence *per se* claims.

### a. Count 1: VCCA

The VCCA forbids one from using a computer to intentionally examine another's "employment, salary, credit[,] or any other financial or identifying information" without authority. Va. Code § 18.2-152.5(A). "A person [acts] 'without authority' when he knows or reasonably should know that he has no right, agreement, or permission or acts in a manner knowingly exceeding such right, agreement, or permission." *Id.* § 18.2-152.2. Singletary asserts that Sunbit, TAB, and Leete violated § 18.2-152.5 by "continu[ing] to access, use, and disseminate [his] personal, financial, and employment information without lawful authority" after he allegedly rescinded the contract and revoked consent. (ECF No. 30 ¶ 36.) These allegations fail to state a VCCA claim in numerous respects. But his failure to plausibly allege that he properly rescinded the financing agreement undercuts his claim that Sunbit, TAB, and Leete acted without authority. *Supra* Section III.C. Nor does his assertion that Sunbit and TAB acted without authority comport with the reality that they needed to access his personal information to effectively investigate his credit dispute. *See* 15 U.S.C. § 1681s-2(a)(2) (imposing a duty on furnishers of credit information to correct and update inaccurate information); *id.* § 1681s-2(a)(8)(E) (directing furnishers to investigate credit disputes and "review all relevant information provided by the consumer with the notice"); *see also S.R. v. Inova Healthcare Servs.*, No. 174290, 1999 WL 797192, at *8 (Va. Cir. Ct. June 1, 1999) (explaining that § 18.2-152.5 "was not aimed at preventing . . . enterprises from accessing confidential information necessary to effectively conduct business"). Thus, Singletary has failed to state a VCCA claim.

### b. Count 2: Civil Conspiracy

Singletary next alleges that all four defendants civilly conspired against him, in violation of Virginia Code § 18.2-499 and -500. "[T]o prove a civil conspiracy under Code § 18.2-499, 'a

plaintiff must establish: (1) a combination of two or more persons for the purpose of willfully and maliciously injuring [the] plaintiff in his business; and (2) resulting damage to the plaintiff.'" *Sidya v. World Telecom Exch. Commc'n's, LLC*, 870 S.E.2d 199, 204 (Va. 2022) (internal quotation marks omitted) (quoting *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 317 (Va. 2014)). Critically, § 18.2-499 and -500 "apply to business and property interests, not to personal or employment interests." *Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003).

At one point, Singletary states in conclusory fashion that the defendants' conduct injured his "business interests." (ECF No. 30 ¶ 35.) But he never identifies what specific business interests they injured, giving the Court no reason to accept his conclusory allegation as true. In fact, when later raising his statutory civil conspiracy claim, Singletary alleges only that the defendants conspired to injure his "reputation and financial standing." (*Id.* ¶ 39.) Because this allegation applies only to Singletary's personal interests, he has not validly stated a civil conspiracy claim under § 18.2-499 and -500. *See Andrews*, 585 S.E.2d at 784.

In opposing the defendants' motion to dismiss, Singletary attempts to raise a common law conspiracy claim against the defendants in the alternative to his statutory conspiracy claim. (*See* ECF No. 65, at 12.) As noted, courts may generally consider new allegations that *pro se* litigants include in opposition filings. *See Holley*, 134 F.4th at 144. But this rule does not authorize a plaintiff to bring new claims altogether in opposing a motion to dismiss. *See Campbell ex rel. Equity Units Holders v. Am. Int'l Group, Inc.*, 86 F. Supp. 3d 464, 472 n.9 (E.D. Va. 2015); *cf. Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (barring party from amending complaint through brief opposing a summary judgment motion). Thus, Singletary has not properly raised a common law conspiracy claim.

### c. Count 3: Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *James G. Davis Constr. Co. v. FTJ, Inc.*, 841 S.E.2d 642, 650 (Va. 2020). Singletary alleges that Sunbit, TAB, and Leete "were unjustly enriched through deceptive lending and credit reporting practices."[5] (ECF No. 30 ¶ 44.) Specifically, he asserts that Sunbit, TAB, and Leete "unlawfully retained [his] down payment and continue[d] to derive financial benefits from their fraudulent and coercive business practices." (*Id.* ¶ 45.) He also claims that Sunbit, TAB, and Leete "exploited their position of power and information asymmetry, forcing [Singletary] into an unfair financial arrangement under misleading and coercive terms." (*Id.* ¶ 46.)

"The existence of an express contract covering the same subject matter of the parties' dispute [ordinarily] precludes a claim for unjust enrichment." *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018). But plaintiffs may still bring unjust enrichment claims "where 'a valuable performance has been rendered under a contract that is invalid . . . or otherwise ineffective.'" *James G. Davis Constr.*, 841 S.E.2d at 648 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2, cmt. c (A.L.I. 2011)). Thus, the existence of the financing agreement does not, by itself, prevent Singletary from raising an unjust enrichment claim.

At the same time, Singletary's failure to plausibly allege that he properly rescinded the financing agreement undercuts his allegation that Sunbit, TAB, and Leete "unlawfully retained [his] down payment." (ECF No. 30 ¶ 45); *supra* Section III.C. If anything, *Singletary* may have

---

[5] Although Singletary refers to the "[d]efendants" broadly in raising this allegation, the ensuing paragraphs in his amended complaint make clear that his unjust enrichment claim pertains to Sunbit, TAB, and Leete. (*See* ECF No. 30 ¶¶ 45–46.)

been unjust enriched by having repairs done to his car without making full payment. Furthermore, Singletary's apparent failure to make timely payments under the terms of the financing agreement undercuts his claim that Sunbit, TAB, and Leete continued to derive financial benefits from the contract. Accordingly, he has not shown that the contract is invalid or otherwise ineffective on these grounds.

Singletary's other challenge to the financing statement's validity stems from his claim that Sunbit, TAB, and Leete "exploited their position of power" and forced him into the contract. (ECF No. 30 ¶ 46.) Yet, Singletary concedes that he had the option to pay in full, thereby giving him a choice in the matter. Thus, he has not shown that the financing statement is invalid or otherwise ineffective on this ground either. With no plausible basis upon which to find the financing statement invalid, the Court must preclude Singletary's unjust enrichment claim.

Finally, in opposing Leete's motion to dismiss, Singletary states for the first time that Leete unjust enriched itself by charging for unnecessary repairs.[6] While the Court may consider new allegations raised in a *pro se* litigant's opposition brief, *see Holley*, 134 F.4th at 144, this assertion goes beyond supporting Singletary's existing allegations and introduces an entirely new theory of liability for unjust enrichment. Because Singletary failed to raise this theory in his amended complaint, the Court declines to consider it and will dismiss his unjust enrichment claim in full.

### d. Count 4: Defamation

Singletary next claims that all the defendants defamed him. He first asserts that Sunbit and TAB "published false and defamatory statements concerning [Singletary] by misreporting a charge-off on an account they previously stated was not [his] responsibility." (ECF No. 30 ¶ 49.)

---

[6] Although Singletary asserted that Leete charged for unnecessary repairs in raising his fraudulent misrepresentation claim, (*see* ECF No. 30 ¶ 55), he never incorporated that allegation into his unjust enrichment claim, (*see id.* at 13).

He also states that Trans Union knowingly continued to report and maintain this false information even though he disputed it. (*Id.* ¶¶ 49, 51.) Although Singletary raises no specific defamation allegations against Leete, he nevertheless accuses it of defamation, too. (*Id.* ¶ 52.)

The FCRA ordinarily preempts defamation claims. *See Ross v. F.D.I.C.*, 625 F.3d 808, 813–14 (4th Cir. 2010) (citing 15 U.S.C. § 1681h(e)). "The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'" *Id.* at 814 (alteration in original) (quoting 15 U.S.C. § 1681h(e)). Thus, determining whether Singletary's defamation claim can proceed involves a two-step inquiry. *Id.* First, the Court must

> ask whether the claim falls within the scope of § 1681h(e), which includes only claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report.

*Id.* (quoting 15 U.S.C. § 1681h(e)). "The second step in the analysis involves determining whether the 'malice or willful intent to injure' exception to the general bar against state law actions applies." *Id.* (quoting 15 U.S.C. § 1681(e)).

Even if the Court assumes that the defamation claim falls within § 1681h(e)'s ambit, Singletary has not plausibly alleged that the defendants acted with malice to trigger § 1681h(e)'s limited exception. "[T]he FCRA does not define 'malice,'" and the Fourth Circuit has not opined "on whether state or federal law governs the meaning of 'malice' in § 1681h(e)." *Id.* at 815. Under both federal and Virginia law, however, a defendant acts with malice if he makes a statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)); *see WJLA-TV v. Levin*, 564 S.E.2d 383, 391 (Va. 2002) (articulating same standard under state law). Because Singletary has not alleged facts showing that he properly rescinded the financing agreement, *supra* Section III.C., the

defendants had every right to believe that the contract remained in effect and that Singletary was not timely making payments on it. As a result, Singletary has not plausibly shown that the defendants knowingly made false statements by reporting a charge-off on his account, even after he disputed the charges. His defamation claim accordingly fails on preemption grounds.

### e. Counts 5 and 6: Fraudulent Misrepresentation and Fraudulent Inducement

Singletary further raises fraudulent misrepresentation and fraudulent inducement claims against Sunbit, TAB, and Leete. Federal Rule of Civil Procedure 9(b) requires parties to state with particularity the circumstances constituting an alleged fraud. *See Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025). This includes stating "the time, place, and contents of false representations, as well as the identity of the person making the representation and what he obtained thereby." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). This heightened pleading standard applies to both *pro se* and represented litigants alike. *See id.* (holding *pro se* plaintiff to Rule 9(b)'s heightened pleading standard).

Singletary fails to satisfy Rule 9(b)'s heightened pleading requirements in raising fraud claims against Sunbit and TAB. Singletary asserts that Sunbit and TAB, along with Leete, "made material misrepresentations to [him], including falsely portraying the financing agreement as beneficial while concealing key terms and not providing [him] with full disclosures." (ECF No. 30 ¶ 53.) Earlier, however, Singletary states only that Leete's agent, David, committed these acts.[7] (*See id.* ¶¶ 14–15.) Singletary also claims that Sunbit and TAB "misrepresented the impact of the

---

[7] In responding to Leete's motion to dismiss, Singletary asserts that David either "act[ed] in concert with Sunbit or independently." (ECF No. 59, at 13.) But he never identifies the Sunbit representative with whom David allegedly acted, and his equivocation on whether Sunbit was even involved undermines his claim that Sunbit made any fraudulent misrepresentations and inducements.

financing on [his] credit, falsely assuring him that it would not harm his score," (*id.* ¶ 54), without specifying who from Sunbit or TAB made this false assurance or when and where it occurred. Then, when raising his fraudulent inducement claim, Singletary again states that Sunbit and TAB failed to disclose "the true cost of credit and the impact on his credit score," (*id.* ¶ 58), which induced him into the financing agreement and caused Sunbit and TAB to "automatically enroll[] [him] in several company policies that limit or deprive [him] of his legal rights," (*id.* ¶ 59). As before, this allegation appears to arise from conduct allegedly committed by Leete's agent, David, as Singletary does not specify who from Sunbit or TAB concealed this information. Thus, Singletary's fraud claims against Sunbit and TAB fail.

So, too, does he fail to validly assert fraud claims against Leete. Singletary predicates his fraud claims against Leete on three grounds: (1) David's misrepresentation of the financing agreement's purported benefits, (2) David's alleged failure to disclose key contractual terms to him, and (3) David's misrepresentation of the nature of the repairs needed for Singletary's vehicle. Singletary clearly articulates the time, place, and identity of the person who committed these acts. But he does not describe with particularity what benefits of the contract David misrepresented, what key terms David failed to disclose, or what types of repairs Leete unnecessarily performed. By not offering these details, Singletary has failed to meet Rule 9(b)'s heightened pleading standard. The Court will dismiss his fraud claims against Leete as well.

### *f. Count 7: IIED*

Singletary next raises an IIED claim against all defendants. To state an IIED claim, a plaintiff must allege that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Almy v.*

*Grisham*, 639 S.E.2d 182, 186 (Va. 2007). Liability attaches only where the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 187 (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)). The resulting emotional distress also must be "so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 162. "Because of the problems inherent in proving [an IIED claim]," courts do not regard this tort with favor. *Almy*, 639 S.E.2d at 187 (citing *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006)).

In *Russo*, the defendant called the plaintiff hundreds of times after she declined to date him, hanging up each time as soon as she answered. *See Russo*, 400 S.E.2d at 161. The plaintiff alleged that she suffered from physical symptoms of stress, became reclusive, and could no longer concentrate or sleep due to the defendant's conduct. *Russo*, 400 S.E.2d at 161, 163. Despite the manifestation of these symptoms, however, the Virginia Supreme Court affirmed the dismissal of the plaintiff's IIED claim on the basis that the distress she suffered was not "so severe that no reasonable person could be expected to endure it." *Id.* at 163.

Singletary alleges even less than the plaintiff in *Russo* to support his IIED claim. Singletary faults Sunbit, TAB, and Leete for allegedly inducing him into the financing agreement and misreporting his credit information to Trans Union, and all four defendants for failing to correct their errors. Such conduct pales in comparison to the hundreds of harassing calls that the plaintiff in *Russo* received. *See id.* at 161. Moreover, Singletary's conclusory assertion that he "suffered significant emotional distress, anxiety, and reputational harm," (ECF No. 30 ¶ 68), comes nowhere close to demonstrating that his distress was "so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163. His IIED claim accordingly fails.

### g. *Count 8: Negligence* Per Se

For his final state-law claim, Singletary asserts that all defendants committed negligence *per se* by violating the FCRA, FDCPA, TILA, Virginia Consumer Protection Act ("VCPA"), and the Consumer Credit Protection Act of 1968 ("CCPA").[8] "To sue for negligence *per se* in Virginia, a plaintiff must show," among other requirements, "that . . . 'the defendant violated a statute enacted for public safety.'" *In re Cap. One Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 408 (E.D. Va. 2020) (quoting *Collett v. Cordovana*, 772 S.E.2d 584, 589 (Va. 2015)). "In Virginia, a statute enacted for public safety generally is designed to afford protection to the public against careless or reckless acts which may result in *bodily injury or property damage*." *Id.* (alteration in original) (internal quotation marks and citation omitted); *see MacCoy v. Colony House Builders, Inc.*, 387 S.E.2d 760, 763 (Va. 1990) (negligence *per se* occurs where one violates "any statute enacted to protect health, safety, and welfare"). Because none of the federal and state statutes upon which Singletary predicates his negligence *per se* claim against bodily injury or property damage, they do not qualify as public safety statutes. His negligence *per se* claim, therefore, fails.

### 2. *Federal Claims*

Singletary further brings seven federal claims under the (1) FCBA, (2) FCRA, (3) TILA, (4) FDCPA, (5) RICO Act, (6) EFTA, and (7) CFAA. The Court addresses each in turn.

### a. *Counts 9, 11, and 14: FCBA, TILA, and EFTA*

Singletary brings TILA claims against Sunbit, TAB, and Leete, and EFTA and FCBA claims against just Sunbit and TAB. The TILA, EFTA, and FCBA each have one-year statutes of limitations. *See* 15 U.S.C. § 1640(e) (TILA); *id.* § 1693m(g) (EFTA); *Roa v. State Farm Bank*, No. 1:21-cv-881 (AJT/MSN), 2021 WL 11702071, at *2 (E.D. Va. Oct. 22, 2021) (since the FCBA

---

[8] Singletary does not bring VCPA or CCPA claims despite invoking them here.

falls within "the same statutory scheme as the [TILA]," a plaintiff must file an FCBA claim within the one-year limitations period applicable to violations of TILA under § 1640(e)"). As a result, Singletary must have brought each claim within one year of the alleged violations occurring, or else they fail.

*i. TILA*

Singletary asserts that Sunbit, TAB, and Leete violated the TILA on November 9, 2022, "by failing to clearly and conspicuously disclose key terms and policies of the alleged credit transaction" and not "provid[ing] the required disclosures before the credit transaction was finalized." (ECF No. 30 ¶¶ 14, 88–89.) He further asserts that Sunbit, TAB, and Leete violated the TILA "by falsely stating that the transaction would not impact [his] credit." (*Id.* ¶ 90.) While Singletary does not specify when this latter violation occurred, it appears to have occurred either when David presented the financing agreement to him on November 9, 2022, or when a Sunbit customer service representative told him on February 9, 2023, that he had no responsibility for the account. Either way, Singletary did not sue until November 8, 2024, well over a year after any of these events occurred. The statute of limitations accordingly bars his TILA claim.

*ii. EFTA*

Singletary next claims that Sunbit and TAB violated the EFTA by "fail[ing] to properly disclose key terms of the alleged electronic transfer" on November 9, 2022. (ECF No. 30 ¶¶ 14, 99.) He further asserts that Sunbit and TAB "failed to return unauthorized transactions despite [Singletary's] dispute," in violation of 15 U.S.C. § 1693f(c). (*Id.* ¶ 100.) Under that statute, a financial institution has ten days to recredit a customer's account upon receiving notice of an error in an electronic funds transfer. *See* 15 U.S.C. § 1693f(c). Singletary allegedly notified Sunbit and TAB of errors on November 11, 2022, meaning that the alleged violation must have occurred by

19

November 21, 2022. Because Singletary did not file suit until nearly two years later, so his EFTA claim fails.

### iii. FCBA

Finally, Singletary brings FCBA claims against Sunbit and TAB under 15 U.S.C. §§ 1666 and 1666a. To state a claim under the FCBA, a consumer must allege (1) that a billing error existed, (2) that he notified the creditor of the billing errors within sixty days of discovering the error, and (3) that the creditor failed to comply with the procedural requirements of the statute. *Murr v. Capital One Bank (USA), N.A.*, 28 F. Supp. 3d 575, 594 (E.D. Va. 2014); *see* 15 U.S.C. § 1666(a). Once the creditor has notice, it must "acknowledge the dispute within thirty days, investigate the matter, and provide a written explanation of its decision within ninety days." *Murr*, 28 F. Supp. 3d at 593. Based on this timeframe, "the one-year statute of limitations begins to run, at the latest, [ninety] days after a creditor receives timely notice arising from the first billing statement reflecting the billing error." *Newsome v. Perez*, No. 3:24-CV-00249-KDB-DCK, 2024 WL 3833276, at *3 (W.D.N.C. Aug. 15, 2024).

While Singletary disputed the validity of the financing agreement with Sunbit and TAB on November 11, 2022, he does not make clear when he first reported a billing error to them. He did, however, report an issue concerning a late payment on his account to Sunbit on February 9, 2023. He thus knew of the alleged billing error no later than this date. From there, Singletary had sixty days to provide written notification of the error to Sunbit and TAB, who then had ninety days to provide him with a written explanation of its investigatory findings. *See Murr*, 28 F. Supp. 3d at 593. This combined 150-day period expired on July 9, 2023, meaning that the statute of limitations on his FCBA claims began accruing no later than that date. Because Singletary did not sue until November 8, 2024, his FCBA claims likewise fail on statute of limitations grounds.

20

### b. Count 10: FCRA

Singletary next alleges a litany of FCRA violations by Sunbit and TAB as furnishers of information and by Trans Union as a consumer reporting agency.

#### i. FCRA Claims Against Sunbit and TAB

Singletary first asserts that Sunbit and TAB violated several provisions of 15 U.S.C. § 1681s-2(a). (*See* ECF No. 30 ¶¶ 80, 82.) Because the "FCRA explicitly bars private suits for violations of § 1681s-2(a)," these claims fail. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *see* 15 U.S.C. § 1681s-2(d).

Singletary further claims that Sunbit and TAB violated 15 U.S.C. § 1681s-2(b) in several ways. (ECF No. 30 ¶¶ 81–83.) A plaintiff states a claim under § 1681s-2(b) by alleging (1) that he submitted a dispute over the accuracy of information on a credit report to a consumer reporting agency, (2) that the consumer reporting agency notified the furnisher of that dispute; and (3) that the furnisher failed to reasonably investigate whether it could verify the disputed information. *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025).

To satisfy the first element, the plaintiff must set forth factual allegations showing "that the inaccuracy or incompleteness is objectively and readily verifiable by the furnisher." *Id.* at 252. "Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Id.* at 251. Singletary disputed the accuracy of his credit information based on his assertion that David fraudulently induced him into the financing agreement, thereby rendering it invalid. Determining whether David committed fraud, however, would require Sunbit and TAB to evaluate the subjective nature of David's and Singletary's actions when forming the contract. This defect alone proves fatal to Singletary's § 1681s-2(b) claim.

Moreover, Singletary admits that he never stated that Trans Union notified Sunbit and TAB of the dispute. (ECF No. 65, at 28.) He nevertheless maintains that the Court can reasonably infer that Sunbit and TAB had notice of the dispute because he personally raised the issue with them on at least three occasions. (*Id.*; *see* ECF Nos. 30-3, 30-4, 30-8.) That may be true, but § 1681s-2(b) imposes liability only where a credit reporting agency, rather than the individual affected, notifies a furnisher of the dispute. *See* 15 U.S.C. § 1681s-2(b)(1) (imposing duties on furnisher upon "receiving notice pursuant to section 1681i(a)(2) of this title"); *id.* § 1681i(a)(2) (requiring a credit reporting agency, rather than the individual affected, to provide to the furnisher "all relevant information regarding the dispute); *see also Rich v. Stern & Assocs., P.A.*, No. 3:15CV451, 2016 WL 4480695, at *2 (W.D.N.C. Aug. 24, 2016) (rejecting § 1681s-2(b) claim where the plaintiff stated only that he personally notified the furnisher of the dispute); *White v. Fannie Mae*, No. 1:13-29923, 2014 WL 5442970, at *6 n.4 (S.D. W. Va. Oct. 24, 2014) (same). Accordingly, Singletary has not satisfied the second element of a § 1681s-2(b) claim either. His FCRA claims against Sunbit and TAB cannot proceed.

### ii.  FCRA Claims Against Trans Union

Singletary's first FCRA claim against Trans Union arises under 15 U.S.C. § 1681e(b). A consumer reporting agency "violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy" of the information contained in the report. *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *see Henderson v. Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022). Singletary asserts that Trans Union reported inaccurate information concerning his debt on the financing agreement after he rescinded the contract and "fail[ed] to ensure maximum possible accuracy" of the information in the report. (ECF No. 30 ¶ 84.) But

22

since he has not plausibly alleged that he validly rescinded the financing agreement, *supra* Section III.C., he has not built a logical bridge showing that the credit report contained any inaccuracies. In addition, Singletary's § 1681e(b) claim arises from "a legal dispute of an underlying debt" with respect to the financing agreement, which amounts to an impermissible collateral attack on Trans Union. *Saunders*, 526 F.3d at 150. Thus, his § 1681e(b) claim fails.

Singletary further brings claims against Trans Union under 15 U.S.C. § 1681i, "which requires consumer reporting agencies to conduct reinvestigations of allegedly inaccurate information contained in credit reports in certain circumstances." As with § 1681e(b), "a consumer who brings a § 1681i failure to reinvestigate claim must first show that his credit file contains inaccurate or incomplete information." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009) (internal quotation marks and citation omitted); *see Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008). Moreover, consumer reporting agencies need not "resolve legal disputes about the validity of the underlying debts they report" in conducting reasonable reinvestigations. *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) (citing *Carvalho*, 629 F.3d at 892, and *DeAndrade*, 523 F.3d at 68); *see Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 287 (5th Cir. 2025) ("[A] consumer may not use § 1681i's reinvestigation procedures to collaterally attack the validity of a reported debt."); *see also Roberts*, 131 F.4th at 251 (credit reporting agencies need only investigate objectively and readily verifiable information). As noted, Singletary has not plausibly alleged that his credit report contained any inaccuracies, and his § 1681i claim amounts to an impermissible collateral attack on Trans Union anyway. His § 1681i claims accordingly fail for the same reasons his as § 1681e(b) claim.

### c. Count 12: FDCPA

Singletary next brings an FDCPA claim against Sunbit and TAB. To state an FDCPA claim, a plaintiff must show, among other requirements, that "the defendant is a debt collector." *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010). "The FDCPA defines a debt collector as 'any person who uses an instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects . . . , directly or indirectly, debts owed or due . . . another.'" *Id.* at 647–48 (alteration in original) (quoting 15 U.S.C. § 1692a(6)). Singletary sets forth no allegations showing that Sunbit and TAB qualify as debt collectors, so his FDCPA claim cannot survive.

### d. Count 13: RICO

Singletary next raises a RICO claim against all defendants. To prevail on a RICO claim, a plaintiff must show that the defendants "engaged in a 'pattern of racketeering activity.'" *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002) (quoting 18 U.S.C. § 1962). The RICO statute defines "'racketeering activity' . . . as 'any act or threat' involving specified state law crimes, such as murder or bribery, or an 'act' indictable under various federal statutes," such as acts relating to extortionate credit transactions, mail fraud, and wire fraud. *Id.* (quoting 18 U.S.C. § 1961(1)). "To have a 'pattern' of such activity, two or more predicate acts of racketeering must have been committed within a ten year period." *Id.* (quoting 18 U.S.C. § 1961(5)). The acts must relate to each other and "amount to or pose a threat of continued criminal activity." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "These requirements are designed to prevent RICO's harsh sanctions, such as treble damages, from being applied to garden-variety fraud schemes." *ePlus Tech.*, 313 F.3d at 181.

Singletary alleges that the defendants committed three predicate acts giving rise to liability under the RICO statute.[9] First, he asserts that they made "[e]xtortionate extensions of credit in violation of 18 U.S.C. § 892." (ECF No. 30 ¶ 97.a.) "An extortionate extension of credit" occurs when the creditor and debtor both understand, "at the time [the extension of credit] is made," that any delays or failures in making payment "could result in the use of violence or other criminal means to cause harm to the person, reputation, or property of any person." 18 U.S.C. § 891(6). Singletary sets forth no facts indicating that on November 9, 2022—the date on which he entered into the financing agreement—both he and the defendants understood that if he failed to timely pay, they could resort to violence or engage in other criminal conduct against him. Thus, this cannot viably serve as a predicate act under the RICO statute.

Second, Singletary states that the defendants collected "extensions of credit by extortionate means under 18 U.S.C. § 894," (ECF No. 30 ¶ 97.b.), by "collect[ing] on a debt they had no legal authority to enforce," (ECF No. 65, at 30). Singletary has not plausibly alleged that he validly rescinded the financing agreement, such that the defendants lacked authority to collect on the debt. *Supra* Section III.C. Even if he had, he offers no facts indicating that the defendants actually collected on the debt. To the contrary, it appears that Singletary failed to make timely payments on the account, which led Sunbit and TAB to report his account as a charge-off. His assertion that the defendants committed the predicate act of collecting extensions of credit by extortionate means cannot stand either.

---

[9] In responding to Sunbit and TAB's motion to dismiss, Singletary further asserts that their alleged violation of the CFAA (18 U.S.C. § 1030) serves as a fourth predicate act for his RICO claim. (*See* ECF No. 65, at 29.) The RICO statute does not recognize a violation of 18 U.S.C. § 1030 as a predicate act of racketeering activity. *See* 18 U.S.C. § 1961(1).

Third, Singletary alleges that the defendants committed mail fraud or wire fraud.  (ECF No. 97 ¶ 97.c.)[10]  One commits mail fraud or wire fraud if he "(1) devised or intended to devise a scheme to defraud and (2) used the mail or wire communications in furtherance of the scheme." *United States v. Wynn*, 684 F.3d 473, 477 (4th Cir. 2012).  "To establish a scheme to defraud, 'the government must prove that the defendant[] acted with the *specific intent to defraud*.'"  *Id.* at 478 (alteration in original) (quoting *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001)).  As noted, Singletary has not plausibly alleged that he validly rescinded the financing agreement and, consequently, that the defendants defrauded him in any way. *See supra* Section III.C.  Thus, mail fraud and wire fraud cannot viably serve as predicate acts for Singletary's RICO claim.  Because Singletary has not established that the defendants committed any predicate acts giving rise to liability under the RICO statute, this claim fails.

### e. Count 15: CFAA

Singletary lastly brings a CFAA claim, alleging that the defendants "knowingly and with intent to defraud accessed a protected computer without authorization, violating 18 U.S.C. § 1030(a)(5)(B)–(C)."  (ECF No. 30 ¶ 102.)  A "protected computer" includes any used "in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2).  A person "accesses a computer 'without authorization' when he gains admission to a computer without approval."  *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012).

Singletary claims that the defendants violated the CFAA by using their own computers to access his "personal, financial, and employment data" without his consent.  (ECF No. 65, at 33.) A CFAA violation arises where one lacks authority to use the specific computer at issue, not where

---

[10] Singletary states that the defendants committed wire fraud, but in so doing, he cites to 18 U.S.C. § 1341, which concerns mail fraud.

one lacks authority to access one's information using a computer. *See WEC Carolina*, 687 F.3d at 204. Because Singletary has presented no allegation of unauthorized computer use, his CFAA claim fails.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Singletary's motion to exclude consideration of the attachment to Sunbit and TAB's motion to dismiss, deny Singletary's motion for leave to file a supplemental response to the defendants' motions to dismiss, and grant each of the defendants' motions to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and mail a copy to Singletary.

Date: 22 August 2025
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge